UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 1:21CR |
| v. | ) | |
| | ) | **FACTUAL BASIS** |
| LINDSEY ALLISON KERNS | ) | |
| | ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea.

This Factual Basis does not attempt to set forth all of the facts known to the United States at this time. This Factual Basis is not a statement of the defendant, and, at this time, the defendant may not have provided information to the United States about the offenses to which the defendant is pleading guilty, or the defendant's relevant conduct, if any.

By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender. The parties also agree that this Factual Basis may, but need not, be used by the United States Probation Office and the Court in determining the applicable advisory guideline range under the *United States Sentencing Guidelines* or the appropriate sentence under 18 U.S.C. § 3553(a). The defendant agrees not to object to any fact set forth below being used by the Court or the United States Probation Office to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a) unless the defendant's right to object to such particular fact is explicitly reserved below. The parties' agreement does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have agreed not to object and which are relevant to the Court's guideline computations, to 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

1. Beginning sometime in December 2018, and continuing until at least on or about April 4, 2020, at all times relevant to this Bill of Information, the defendant LINDSEY ALLISON KERNS, owned and operated "Home Care Coordinators, LLC," a business that provided home health care in Buncombe

and Madison Counties, and elsewhere, within the Western District of North Carolina.

2. In December 2018, KERNS arranged to provide home health care services to victims SA and PR, and did in fact begin providing such services then. SA was then 86 years old and PR was then 90 years old. SA and PR were close family friends and resided in nearby residences, in Asheville, North Carolina. PR suffered from dementia and was not capable of managing his affairs or finances. SA served as PR's power-of-attorney and managed and controlled his finances on his behalf.

3. On January 1, 2019, KERNS drafted and entered into a "PROFESSIONAL SERVICES AGREEMENT" with SA and PR. In the agreement, KERNS agreed to provide one caregiver to PR for ten hours per day, seven days per week, at a rate of $20 per hour. KERNS also agreed to provide one caregiver to SA for six hours per day, five days per week, at a rate of $20 per hour. KERNS agreed to act as "care coordinator" and be "on call" to PR and SA, 24 hours per day, seven days per week, totaling 168 hour per week, at a rate of $30 per hour. The agreement stated that KERNS would provide an additional caregiver for any extra hours upon PR's and SA's request, at the rate of $20 per hour.

4. KERNS continued to provide home health care services to SA and PR for all of 2019 and into 2020. KERNS did not provide SA or PR with invoices detailing health care services rendered. Instead, on a weekly basis, KERNS orally informed SA of how much money KERNS claimed she was owed for home health care services rendered, and SA would write checks in those amounts from PR's First Citizen's Bank account and his Oteen V.A. Federal Credit Union account, a financial institution located in the state of North Carolina. KERNS deposited the checks into her Woodforest National Bank account, which is based in the state of Texas, and her TD Bank account, which is based in the state of New Jersey.

5. KERNS regularly overbilled SA and PR for the provided services. Because KERNS did not provide invoices—or even keep accurate business records—the amounts that KERNS directed SA to pay had little relationship to the actual services provided.

6. The manner and means by which KERNS defrauded PR and SA, included amongst others:

    a. Providing a greater number of caregivers than needed or agreed upon by PR and SA.

    b. Billing for a greater number of caregivers or hours of care than actually provided to PR and SA.

c.  Double-billing for additional services, such as cleaning and moving services, that were either not provided or were provided by caregivers during hours already billed.

d.  Billing at a higher rate than agreed upon.

e.  Arranging rentals of PR's rental homes to individuals at rates far below market value.

7. From December 2018 through April 2020, KERNS directed SA to pay, and KERNS did in fact receive, funds totaling approximately $1,465,546.99, for home health care and other miscellaneous services allegedly rendered, paid by SA, from PR's First Citizen's Bank account and his Oteen V.A. Federal Credit union account.

8. The fair market value of the services provided to PR and SA by KERNS was $376,992.00. Therefore, the amount overcharged/loss amount was $1,088,554.99.

9. During the course of the fraud, on July 25, 2019, KERNS directed SA to purchase an "Official Check" from the Oteen V.A. Federal Credit Union, in the amount of $65,000 using funds from PR's Oteen V.A. Federal Credit Union account. The $65,000 payment constituted proceeds of the scheme described in paragraphs 1 through 8.

10. On July 26, 2019, KERNS deposited the $65,000 Official Check into her TD Bank account. KERNS then purchased an "Official Check" from TD Bank in the amount of $57,000. KERNS used the $57,000 Official Check and $7,927.52 in cash to purchase a 2019 Chevrolet Silverado pickup truck that she gave to CD as a gift. All of these funds were proceeds from the scheme.

11. On June 26, 2019, KERNS deposited a check from PR's Oteen Federal Credit Union account in the amount of $58,000 to her Woodforest bank account. On June 26, 2019, KERNS tendered a check for $43,892.79 from her Woodforest bank account in order to purchase a 2019 Toyota Tacoma for CD. This amount was the exact cost of the vehicle.

12. On July 1, 2019, KERNS deposited two checks in her Woodforest Bank account totaling $29,980.00 from PR's First Citizens Bank account. On July 1, 2019, KERNS purchased a 2019 Polaris RZR- 1000XP for a total of $27,635.43. KERNS purchased the UTV with a cashier's check from her Woodforest Bank account for $25,602.43 and a debit transaction for $2,033.

13. On July 17, 2019, KERNS deposited three checks in her Woodforest Bank account totaling $47,960.00 from PR's First Citizens Bank account. On

July 19, 2019, KERNS purchased a 2019 POLARIS RZR for CD with a cashier's check from her Woodforest Bank account for $ 20,930 and a total purchase price of $22,919. When KERNS purchased the cashier's check, she also withdrew $5,000 in cash.

14. From approximately September 2018 to August 2019 KERNS fraudulently used a joint Federal and State funded program and submitted claims of medical expenses totaling $7,402.28. According to the NC Department of Health and Human Services, a family of eight must earn less than $7,758 per month; KERNS earned $10,080 in the first two weeks of 2019. KERNS was required, and signed documents acknowledging, that she must report any change in income within 10 calendar days of the change. KERNS was required to provide income tax verification in order to qualify for these programs. KERNS failed to file tax returns in 2018 and 2019, which would show she was ineligible for benefits, and therefore failed to provide the documents that accurately represented her income.

15. While PR and SA were her clients, KERNS engaged in lavish spending with the proceeds of the fraud. In addition to the vehicle purchases outlined above, KERNS also made numerous retail, entertainment, and lodging purchases. These include:

   a. $3,330.11 at Louis Viutton on July 3, 2019;

   b. $860.54 at TJMaxx on October 28, 2019;

   c. $1,697.37 at Stubhub on February 20, 2019;

   d. $1,332.04 at Stubhub on September 9, 2019;

   e. $1,624.00 at Omni Hotels on August 6, 2019; and

   f. $4,502.88 over three separate transactions at The Tides at Folly Beach, SC on April 18, 2019.

16. KERNS circumvented bank reporting of cash transactions greater than $10,000 by directing SA to write checks for amounts less than $10,000. At times when KERNS would request payment for more than $10,000 that she intended to convert to cash, she would instruct SA to write multiple checks. KERNS claimed this was because the bank would place a hold on the check and she would not be able to pay her employees.

17. Later, KERNS was investigated by the Federal Bureau of Investigation (FBI) and the Internal Revenue Service (IRS). KERNS agreed to be

interviewed by agents on May 21, 2020. During the interview, KERNS made false statements to agents about her business activities. These included:

 a. KERNS stated that all her employees receive IRS Form 1099s, and that they all know that they receive such forms, when in truth and fact, KERNS did not provide IRS Form 1099s to her employees.

 b. KERNS stated that she did not receive any income from a client with initials BM in 2019, when in truth and fact, KERNS did receive income from BM in 2019.

 c. KERNS stated that the vehicles she purchased for CD and CD's son were in payment for services rendered, when in truth and fact, KERNS provided vehicles to CD and CD's son as gifts.

18. On May 21, 2020, KERNS received a subpoena from the Grand Jury for the Western District of North Carolina requesting that she produce certain existing records for her home health care business, to include invoices provided to SA and PR for the 68-week period from December 2018 through April 2020. KERNS had not ever generated any such invoices, so she generated false invoices based on the amounts she believed she had received from SA and PR, rather than for actual services rendered. These invoices were then provided to the Grand Jury with the knowledge that they were not actual business records and with the intent to mislead the Grand Jury.

19. KERNS evaded her income tax obligation by failing to file a personal income tax return for 2018 or 2019 or a business tax return for Health Care Coordinator, LLC for 2018 or 2019. Records reflect no withholdings or payments of income taxes, despite substantial income in both years.

20. KERNS was responsible for the filing of a false tax return for PR by providing false information to PR's certified public accountant (CPA) who prepared PR's tax return. KERNS claimed to the CPA that she was paid $423,531.00 in 2019, but never provided the CPA any documents to substantiate the claim. In fact, KERNS received checks totaling $816,254.99 from PR's First Citizens bank account and Oteen VA Federal Credit Union account during 2019.

DENA J. KING
UNITED STATES ATTORNEY

_/s/ David A Thorneloe_
David A Thorneloe

5

### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis and the Bill of Information in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis and the Bill of Information. I hereby certify that the defendant does not dispute this Factual Basis with the exception of those facts to which I have specifically reserved the right to object, and understands that it may be used for the purposes stated above.

_____   DATED: 12/8/21
THOMAS AMBURGEY, Attorney for Defendant

6