THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:21-cr-00115-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| LINDSEY ALLISON KERNS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Reduction in Sentence." [Doc. 32].

**I.  BACKGROUND**

Beginning sometime in December 2018, and continuing until at least on or about April 4, 2020, the Defendant Lindsey Allison Kerns owned and operated "Home Care Coordinators, LLC," a business that provided home health care in Buncombe and Madison Counties, and elsewhere, within the Western District of North Carolina.  [Doc. 25: PSR at ¶ 11].  In December 2018, the Defendant began providing home health care services to victims SA and PR, who were then 86 years old and 90 years old, respectively.  PR suffered from dementia and was not capable of managing his affairs or finances.  SA served as PR's power-of-attorney and managed and controlled

his finances on his behalf. [Id. at ¶ 12]. The Defendant regularly overbilled SA and PR for the provided services. [Id. at ¶ 17]. She further defrauded them by: providing a greater number of caregivers than needed or agreed upon by PR and SA; billing for a greater number of caregivers or hours of care than actually provided to PR and SA; double-billing for additional services, such as cleaning and moving services, that were either not provided or were provided by caregivers during hours already billed; billing at a higher rate than agreed upon; and arranging rentals of PR's rental homes to individuals at rates far below market value. [Id. at ¶ 18]. From December 2018 through April 2020, the Defendant directed SA to pay, and the Defendant did in fact receive, funds totaling approximately $1,465,546.99, for home health care and other miscellaneous services allegedly rendered. [Id. at ¶19]. The fair market value of the services provided to PR and SA by KERNS was $376,992.00; therefore, the amount overcharged/loss amount was $1,088,554.99. [Id. at ¶ 20]. The Defendant's conduct caused a substantial financial hardship to PR in that he suffered a significant loss to his rental and trust funds. [Id. at ¶ 35].

The Defendant was charged in a Superseding Bill of Information with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957. [Doc. 10]. The

2

Defendant pled guilty to both counts pursuant to a written Plea Agreement. [Docs. 11, 15]. A Presentence Report was prepared in advance of sentencing, which determined that the Defendant had zero criminal history points, which established a criminal history category of I. [Doc. 25: PSR at ¶ 66]. That criminal history category, when combined with a total offense of level of 22, resulted in a guideline range of 41 to 51 months' imprisonment. [Id. at ¶ 99]. On June 23, 2022, the Court sentenced the Defendant to a term of 45 months' imprisonment and ordered her to pay $1,088,544.99 in restitution to her victim, PR. [Doc. 27]. The Defendant did not appeal.

The Defendant now moves pursuant to 18 U.S.C. § 3582(c)(2) and Part B of Amendment 821 for a reduction of her sentence. [Doc. 32].

## II. DISCUSSION

Generally, the Court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, the Court may reduce a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission." See 18 U.S.C. § 3582(c)(2). In such a case, the Court may reduce the sentence if such a reduction would be "consistent with applicable policy statements issued by the Sentencing

Commission." Id. The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

In considering a motion under § 3582(c)(2), the Court undertakes a two-step analysis. First, the Court must "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized," including calculating "the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019) (quoting Dillon v. United States, 560 U.S. 817, 827 (2010)). Second, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Id. The Court also may consider the defendant's post-sentencing conduct. U.S.S.G. § 1B1.10 cmt. 1(B)(iii). Ultimately, the decision to grant or deny a § 3582(c)(2) motion is within the Court's discretion. United States v. Smalls, 720 F.3d 193, 195 (4th Cir. 2013).

Part B of Amendment 821, which became effective on November 1, 2023, amended U.S.S.G. § 4C1.1 to provide for a decrease of two levels from the offense level determined under Chapters Two and Three for those

4

defendants who did not receive any criminal history points and whose offense of conviction did not include any aggravating factors. U.S.S.G. § 4C1.1 (2023). One of the aggravating factors identified in the revised guideline is that "the defendant did not personally cause substantial hardship." Id. § 4C1.1(a)(6). Here, the factual basis for the Defendant's plea makes clear that the Defendant did, in fact, personally cause substantial financial hardship to her victim. [See Doc. 25: PSR at ¶¶ 35, 46]. As such, the Defendant does not meet the criteria for relief under Amendment 821. Accordingly, the Defendant's motion is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Reduction in Sentence" [Doc. 32] is **DENIED**.

**IT IS SO ORDERED.**  Signed: January 15, 2024

Martin Reidinger
Chief United States District Judge